IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-03009-SKC-KAS

JOSEPH VANECK,

    Plaintiff,

v.

CORE CIVIC OF AMERICA,
TEJINDER SINGH, and
LILLIAN YUTTERMAN,

    Defendants.
_____

**ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____
**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

    This matter is before the Court on Plaintiff's **Motion for Leave to File an Amended Complaint** [#43] (the "Motion for Leave") and on Plaintiff's **Motion for Extension of Time** [#46] (the "Motion for Extension of Time") (together, the "Motions"). Defendants filed a Response [#49] in opposition to the Motion for Leave [#43], and Plaintiff, who proceeds in this matter pro se,[1] filed a Reply [#50] which he titled "The Plaintiff's Rebuttle [sic] to the Defendant's Response to His Motion for Leave to File an Amended Complaint". No responses were filed to the Motion for Extension of Time [#46] and the time to do so has elapsed. Both Motions [#43, #46] have been referred to the undersigned. *See Memoranda* [#44, #47]. The Court has reviewed the briefing, the entire case file, and the

---

[1] The Court must liberally construe a pro se litigant's filings. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should neither be the pro se litigant's advocate nor "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a [litigant's] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

applicable law. For the following reasons, the Court **RECOMMENDS**[2] that the Motion for Leave [#43] be **DENIED**. The Motion for Extension of Time [#46] is **DENIED AS MOOT**.

# I. Background

## A. The Second Amended Complaint [#9]

Plaintiff is a convicted and sentenced state prisoner who has, at all relevant times, been held at the Crowley County Correctional Facility (CCCF), which is run by Defendant Core Civic of America ("CoreCivic"), pursuant to a contract with the Colorado Department of Corrections (CDOC). *See Am. Compl.* [#9] at 2-3. Defendant Tejinder Singh is a physician assistant who works at CCCF. *Id.* at 3. Defendant Lillian Yutterman is CCCF's current Health Services Administrator ("HSA"), who was substituted in place of the former HSA, Christianna Cappellucci ("Ms. Cappellucci") pursuant to Fed. R. Civ. P. 25(d) after Ms. Cappellucci's death. *See Substitution of Party Defendant* [#35] at 1; *Minute Order* [#40] at 2 (directing that Ms. Cappellucci be removed from the docket).[3]

In Plaintiff's Second Amended Complaint [#9], filed on December 14, 2023, he alleges that Defendants failed to follow his surgeon's treatment plan after he underwent reconstructive surgery on his left leg. *See Am. Compl.* [#9] at 4-5. In particular, he alleges that on July 28, 2023, Defendant Singh "went against the treatment plans prescribed by both Dr. Cabiling and Dr. Hanson and took the Plaintiff's wheelchair despite the Doctors

---

[2] While motions to amend are generally considered non-dispositive, when denying amendment would effectively remove a defense or claim from the case, it may be dispositive. *See, e.g.*, *Mason v. Fantasy, LLC*, No. 13-cv-02020-RM-KLM, 2015 WL 429963, at *1 n.2 (D. Colo. Jan. 30, 2015); *Cuenca v. Univ. of Kan.*, 205 F. Supp. 2d 1226, 1228 (D. Kan. 2002). The Court will therefore proceed by Recommendation rather than Order.

[3] Although Plaintiff initially stated both individual and official capacity claims against Ms. Cappellucci, *see Am. Compl.* [#9] at 3, he voluntarily dismissed his individual capacity claims against her at the Scheduling Conference. *See Courtroom Minutes* [#30] at 1.

[sic] treatment orders and the Plaintiff not being physically ready, forcing him to now move about the whole facility with a walker." *Id.* at 4. Later that day, Plaintiff's legs gave out and he fell to the floor, so he was sent back to medical where Defendant Singh and other CoreCivic personnel allegedly "ridiculed, degraded, and made fun of [him]." *Id.* at 5. Plaintiff went back to medical later that day because his hands were bleeding from using the walker, but CoreCivic personnel allegedly threatened to "lock [him] in a medical cell until [he] [could] walk on [his] own again," if he came back or tried to get his wheelchair back. *Id.*

The next morning, when they saw Plaintiff struggling to walk, two correctional officers "took it upon themselves to go to unit 6 and retrieve a wheelchair that had been sitting in a closet for several months unused" and brought it to Plaintiff. *Id.* However, when "medical and shift command heard about this" they ordered the wheelchair taken away again. *Id.* Ms. Cappellucci allegedly "followed suit[] with the rest of the medical staff in going against the Doctor's orders and kept the wheelchair from being returned to the Plaintiff[.]" *Id.* Based on these allegations, Plaintiff lodged an Eighth Amendment deliberate indifference claim against Defendants. *Id.* at 6.

**B.     Proposed New Allegations**

Plaintiff now seeks to amend his complaint to add claims against "Registered Nurse, Heather Trujillo for the violations of his Eighth Amendment Constitutional right against cruel and unusual punishment, CDOC standards/policies Administrative Regulation 700-02 Medical Scope of Service, witness tampering, and fraud." *Motion for Leave* [#43] at 2. He identifies three incidents involving Nurse Trujillo.

3

First, on September 26, 2023, Plaintiff was informed that his medications had been changed to the morning "med line" but the next day, when he arrived, they were not there. *Id.* at 2-3. He went to medical, but Nurse Trujillo refused to give him his medications. *Id.* at 3. Plaintiff explained that he had been instructed to go to medical and that his medication distribution had been moved to mornings, but she still refused to give him his medications, which included blood thinners for a clot issue and pain medications for his leg. *Id.* Nurse Trujillo allegedly told Plaintiff "Go to [the] evening med line if you want them." *Id.* Plaintiff alleges that the evening med line has a longer wait time, he could not stand that long, and the morning line was "shorter and safer for him." *Id.* After leaving medical, Plaintiff saw a different nurse and sought "clarification from her on what to do and what was going on." *Id.* Nurse Trujillo became upset, leaving her post and "yelling at Mr. Van Eck, 'Your [sic] not gonna have her over ride [sic] me.'" *Id.* The other nurse told Nurse Trujillo to "[j]ust give him his meds," but Nurse Trujillo refused and closed the door in Plaintiff's face. *Id.* Plaintiff grieved this incident, filing a Step 3 grievance on November 18, 2023. *See id.* at 10-17 (attached grievances).

Second, on March 13, 2024, around 7:30 a.m., Plaintiff went to medical because he had been scheduled for both an 8:00 a.m. physical therapy appointment and an 8:00 a.m. legal appointment. *Id.* at 4. Nurse Trujillo would not let Plaintiff do his physical therapy early, allegedly telling him, "You're either here at 8:00 a.m. for physical therapy or your [sic] not. Your name will no longer be on the appointment list. You will not be accommodated. This is coming straight from Christianna Cappellucci the HSA!" *Id.* Plaintiff believes that this statement was "retaliation" and "witness tampering" because he had named Ms. Cappellucci in this lawsuit. *Id.* Plaintiff argues that "[i]t is improper and

4

unethical to make an inmate cho[o]se between his need[ed] medical care and legal access." *Id.* Plaintiff submitted an Incident Report on March 20, 2024, and an Offender Request for Accommodations on March 22, 2024. *Id.* He requested that his physical therapy be changed to a different time to accommodate his legal mail and legal appointments, but his request was ignored. *Id.* at 5, 18-19 (attached incident report and request for accommodation).

Third, on October 5, 2024, Nurse Trujillo attempted to make Plaintiff sign a "no show notification" for another physical therapy appointment when "Plaintiff had a conflicting appointment[] that morning. One at medical and the other a legal appointment to mail out legal mail." *Id.* at 5. Ms. Trujillo allegedly "filled out the refusal form in her misleading representation" and "failed to depict the factual base that Plaintiff was not refusing the medical appointment but simply trying to reschedule it due to the conflict in scheduling[.]" *Id.*; *but see id.* at 29 (No-Show Notification form that "offender refused to sign," explaining that "offender states mail appointment takes precedence"). Plaintiff completed another Incident Report and grieved this incident as well. *Id.* at 6, 20-28 (attached incident report and grievances).

## II. Legal Standard

Federal Rule of Civil Procedure 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires." "[T]his mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In other words, "[i]f the underlying facts or circumstances relied upon by a [litigant] may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.* This is consistent with Rule 15's purpose, which is "to provide the maximum opportunity for each claim to be decided on its merits

5

rather than on procedural niceties." *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982). Whether to grant or deny leave to amend a complaint is within a court's discretion. *Foman*, 371 U.S. at 182. Refusing leave to amend is generally justified only on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). However, "[a] court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason[.]" *Bauchman ex rel. Bauchman v. W. High Sch.*, 132 F.3d 542, 562 (10th Cir. 1997).

### III. Analysis

Defendants ask the Court to deny Plaintiff's motion for leave to amend because (1) it is untimely without adequate excuse; (2) it is unrelated to and therefore does not relate back to the Amended Complaint [#9]; and (3) Plaintiff's proposed claims against Nurse Trujillo would be futile because they fail to state an Eighth Amendment claim. *See Response* [#40] at 1-7.

As discussed below, the Court recommends denying amendment because (1) joinder of these unrelated claims would be improper; and (2) amendment would be futile due to Plaintiff's failure to exhaust administrative remedies as to Nurse Trujillo prior to this lawsuit's commencement. Therefore, the Court declines to address the timeliness of Plaintiff's proposed amendment or the plausibility of his allegations.

**A.     Relation Back and Joinder**

Defendants argue that "Plaintiff's allegations against a new defendant and a new claim fail to relate back to the facts or legal theories relied upon in his operative complaint"

6

because "no relationship [exists] between the defendants in the original and operative complaints and the new allegations and new defendant[] sought to be brought in[.]" *Response* [#49] at 3, 4. The Court agrees. Because Plaintiff's claims against Nurse Trujillo do not appear to be time-barred, the Court will conduct its analysis in terms of Rule 20(a)(2) of the Federal Rules of Civil Procedure and joinder rather than Rule 15(c) and relation back. *Cf.* 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1497 (3d ed. June 2024 update) ("Rule 15(c) provides two methods by which an amendment alleging a new or different claim or defense may be allowed to relate back to the filing of the original complaint and thus avoid an otherwise applicable statute of limitations.").

Under Fed. R. Civ. P. 20(a)(2), multiple defendants may be joined in one action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Thus, "[w]hile joinder is encouraged for purposes of judicial economy, the 'Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues.'" *Waterman v. Bell*, No. 24-3220-JWL, 2025 WL 35013, at *1 (D. Kan. Jan. 6, 2025) (quoting *Zhu v. Countrywide Realty Co., Inc.*, 160 F. Supp. 2d 1210, 1225 (D. Kan. 2001)).

A district court properly may deny a motion to amend on the basis of misjoinder where "the amended complaint combines 'separate and unrelated claims'—many of them arising out of different alleged incidents—against multiple defendants." *Gillon v. Fed. Bureau of Prisons*, 424 F. App'x 722, 725-26 (10th Cir. 2011) (quotation marks in original)

7

(affirming district court's denial of joinder); *see also David v. Crow*, No. CIV-21-534-SLP, 2022 WL 22863227, at *2 (W.D. Okla. Aug. 30, 2022) (sua sponte considering misjoinder and recommending denying the plaintiff's attempt to assert new claims that "would inevitably add new defendants not shown to be connected to his initial claims by a common occurrence or question of fact or law"), *report and recommendation adopted*, 2024 WL 3470645 (July 19, 2024), *appeal filed*, No. 24-6167 (10th Cir. Aug. 13, 2024); *Hatten v. Freeborn*, No. 09-cv-02729-CMA-MJW, 2010 WL 1677772, at *2 (D. Colo. Apr. 26, 2010) (adopting magistrate judge's recommendation to deny leave to supplement pleading where "[the] new claim—while also in part concerning [the p]laintiff's medical care—bears no relationship to the medical claims alleged in the operative pleading").

Here, Plaintiff's proposed claims against Nurse Trujillo are completely disconnected from his initial claims against Defendants CoreCivic, Singh, and Yutterman. His initial claims were narrowly focused on Defendants denying him use of a wheelchair and forcing him to use a walker against his surgeon's orders. *See Am. Compl.* [#9] at 4-6. The alleged incidents took place over just two days, from July 28, 2023, to July 29, 2023. *Id.* at 4-5. By contrast, Plaintiff's proposed allegations involve three unrelated interactions with Nurse Trujillo over a roughly one-year period (from September 26, 2023 to October 5, 2024). *See Motion for Leave* [#43] at 2-6. None of these interactions involved the use of a walker or wheelchair: one incident involved distribution of medications and the other two incidents involved Plaintiff being scheduled for physical therapy and legal appointments at the same time. *Id.* As Defendants argue, "there exists no logical relationship between the conduct of the current defendants and the conduct

8

alleged in the request to amend." *Response* [#49] at 4; *see also Hatten*, 2010 WL 1677772, at *2.

The Court finds that allowing Plaintiff to amend his complaint to allege these new claims against a new defendant would violate Fed. R. Civ. P. 20(a)(2). Therefore, the Court **recommends** that the Motion for Leave [#43] be **denied**.

**B.     Futility and Failure to Exhaust**

Defendants also argue that amendment should be denied as futile because Plaintiff has not plausibly stated an Eighth Amendment deliberate indifference claim as to Defendant Trujillo. However, the Court cannot and need not reach the merits of Plaintiff's proposed new claims because they are futile for another reason: they would be subject to dismissal for failure to exhaust administrative remedies before filing suit.

**1.     The PLRA Exhaustion Requirement**

The PLRA requires a prisoner to exhaust any available administrative remedies before he can challenge prison conditions in federal court. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

An inmate may satisfy this exhaustion requirement by "properly following all of the steps laid out in the prison system's grievance procedure," including meeting deadlines and complying with other critical procedural rules.[4] *Little v. Jones*, 607 F.3d 1245, 1249

---

[4] Exceptions to the exhaustion requirement arise where the administrative remedies are not "available" to the prisoner, such as where "prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy," *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010), or where the grievance procedure is "essentially 'unknowable'—so that no ordinary prisoner can make sense of what it demands[.]" *Ross v. Blake*, 578 U.S. 632, 644 (2016) (citations omitted). Neither exception is relevant here.

(10th Cir. 2010) (citing *Woodford*, 548 U.S. at 90); *see also Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies."). Importantly, a court must examine whether the exhaustion requirement is satisfied before examining the merits of a plaintiff's claims. *See, e.g.*, *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.") (citation omitted); *Woodford*, 548 U.S. at 84 ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").

### 2. Timing of Exhaustion

"Since the PLRA makes exhaustion a precondition to filing a suit, an action brought before administrative remedies are exhausted must be dismissed without regard to concern for judicial efficiency." *Ruppert v. Aragon*, 448 F. App'x 862, 863 (10th Cir. 2012) (citations omitted and emphasis omitted). A pre-suit failure to exhaust cannot be cured by post-exhaustion filing of an amended complaint. *May v. Segovia*, 929 F.3d 1223, 1229 (10th Cir. 2019) ("[The plaintiff's] argument that 'the plaintiff's operative [amended] complaint controls the analysis for a statutory exhaustion requirement' is likewise meritless."); *see also Snyder v. Harris*, 406 F. App'x 313, 317 (10th Cir. 2011) ("An inmate is not permitted to complete the administrative exhaustion process *after* he files suit."). As the Tenth Circuit stated in *May*, "adding or substituting a defendant *may* create a new claim for some purposes [but] it does not do so for purposes of the PLRA exhaustion requirement." *May*, 929 F.3d at 1230 (emphasis in original). This is because an "amended complaint, as the operative complaint, supersedes the original complaint's *allegations* but

10

not its *timing*." *Id.* at 1229 (emphasis in original). Under the PLRA, the operative question is "the timing of the claim alleged, not the sufficiency of the allegations." *Id.* at 1229.

      3.     **Application**

Plaintiff commenced this lawsuit on November 9, 2023. *See Compl.* [#1]. By that date, however, he had not exhausted administrative remedies as to any of the incidents involving Nurse Trujillo. The first incident, involving medication, allegedly occurred on September 26, 2023. *See Motion for Leave* [#43] at 2. Plaintiff grieved that incident but did not file his Step 3 grievance until November 18, 2023—more than a week after he filed this lawsuit. *See id.* at 17 (attached Step 3 grievance dated "11-18-2023"). The second and third incidents, which involved Plaintiff's physical therapy appointments, had not yet occurred when Plaintiff filed this suit. *Id.* at 4 (second incident allegedly occurred on March 13, 2024), 5 (third incident allegedly occurred on October 5, 2024). Plaintiff's own attached evidence shows that none of his claims against Nurse Trujillo were exhausted by the time he filed this action.

If the Court were to allow Plaintiff to amend his pleading with these new allegations, his second amended complaint would "supersede[] the original complaint's *allegations* but not its *timing*." *May*, 929 F.3d at 1229. Adding this new defendant might create a new claim for some purposes but "it does not do so for purposes of the PLRA exhaustion requirement." *Id.* at 1230. This action was, and would remain, "brought" on November 9, 2023, which is undisputably before Plaintiff had exhausted administrative remedies as to any of the incidents involving Nurse Trujillo. Those amended allegations would face dismissal for failure to exhaust. Therefore, in addition or in the alternative to misjoinder,

11

the Court **recommends** that the Motion for Leave [#43] also be **denied** on the basis of futility, as the new allegations would be subject to dismissal for failure to exhaust.

**C.      Motion for Extension of Time [#46]**

Plaintiff also asks the Court for an extension of the deadline for amendment of pleadings and joinder of parties because, although he filed his Motion for Leave [#43] before the deadline, he "ha[d] not received a ruling back on the motion an order to move forward with filing his amended complaint/joinder." *Motion for Extension of Time* [#46] at 1-2.

As discussed above, the Court is recommending denying leave to amend on the basis of misjoinder and futility. These deficiencies have nothing to do with timeliness. Therefore, the Motion for Extension of Time [#46] is **denied as moot**.

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that Plaintiff's Motion for Leave to File Amended Complaint [#43] be **DENIED**.

IT IS FURTHER **ORDERED** that Plaintiff's Motion for Extension of Time [#46] is **DENIED AS MOOT**.

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and

recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: March 6, 2025                              BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge